## Millers Creek Railroad Company v. Barnett.

.(Decided June 2, 1914.)

### Appeal from Johnson Circuit Court.

1. Personal Injuries—One Acting in Face of Threatened Danger Bringing Injury upon Himself—Not Necessarily Guilty of Contributory Negligence.—The fact that one in the face of a threatened danger and in an effort to escape it, brings upon himself an injury, and but for which effort on his part the injury would not have occurred, does not necessarily mean that he was guilty of contributory negligence.

2. Personal Injuries—Instructions.—In an action for personal injuries resulting in jumping from a moving train with the object of trying to escape injury, an instruction was erroneous that told the jury it was sufficient if the plaintiff believed he was in danger without regard to whether there were any grounds to reasonably justify the belief.

VAUGHAN, HOWES & HOWES and HAGER & STEWART for appellant.

J. F. BAILEY for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

Appellee recovered judgment for $1,000 from appellant. He claims while in appellant's employ, and while riding on one of its trains in the course of his employ-

ment, he was, through the negligence and carelessness of appellant, and its servants engaged in the operation of the train, suddenly placed in peril, and in an effort to escape the danger that was apparently threatened, he jumped from the train while it was in motion. His arm and shoulder blade were broken, and from which he has never recovered. In other words, his broken arm is, and always will be stiff, as he swears.

Appellant's railroad is a short spur running from Van Lear Junction in a southeast direction up Millers Creek for about four miles. It is used almost exclusively as a coal road, serving several mines in this short distance. It seems from the proof that all the work is done by one locomotive. On the day of the accident, appellee was a member of a section crew working just east of the Millers Creek bridge. The locomotive, with several cars attached, came along from the mines, and, under orders, picked up the crew, and carried them to the junction to aid in loading or rehandling some merchandise freight. This work being completed the section crew got aboard a flat car, and the engine pushed it as far as the water tank at the Millers Creek bridge. After taking water, the engine gave the car a kick, shoving it over the bridge grade, and the conductor at the same time uncoupled the car. While the track from the bridge in going to the mines goes up Millers Creek, yet the approach to the bridge on each side, as is usual in such cases, is up a considerable grade. The engine went on back towards the junction, but when the loose car had climbed the bridge grade, and started down hill on the other side, the conductor attempted to apply the brake, and discovered it would not work, and the car began to pick up speed as it went down the grade. About this time it was passing the place where the men got aboard a short time before, and where they had left their tools and dinner buckets. The conductor called out to them that the brake would not work, and that "if they did not want to go up the line, they had better get off." All the men, except appellee, got off in safety, but appellee, who is sometimes referred to in the evidence as the "old man," and who was awkward and clumsy, did not attempt to go to the hand railing, or to use the stirrups for swinging off, but from the point where he was sitting on the rear end of the car, he pushed himself off in the middle of the track, or rather

lifted himself, and let the car run from under him. The fall he received caused the injuries above described. The car with the conductor on it ran on around the curve for a distance of 600 or 700 feet. Whether the conductor was able to stop it by getting the brake to work. or whether the car reached the grade going up Millers Creek, and in that way stopped, the proof does not disclose. Anyhow, it is shown, that if appellee had remained on the car, he would have been perfectly safe, but he swears that when the conductor announced that the brake would not work, and that everybody had better get off, he thought, of course, that the car was beyond control, and that in going down grade its speed would increase, and that it would either jump the track, or run into an open switch, or collide with loaded coal cars, which, according to the practice at the mines above, were frequently set out on the main track when loaded. It was therefore apparent to him, as he swears, that the quicker he got off the better, for until the car met with some such fate as above stated, it was running as slowly then as it ever would. It is not disputed that the conductor made this announcement about the brake, and the men getting off, nor is it disputed that appellee's physical infirmities were such that he would have been in just as much danger to have attempted to get off the cars as did the other men; in other words, he would in all probability have been injured as much or more by swinging off at the side from the stirrup as by jumping from the rear; and the section foreman knew this; in fact, the foreman swears that he had told him that morning that he was too clumsy to get on or off of a moving car, and he ought not to try it.

The fact that one in the face of a threatened danger, and in an effort to escape it, brings upon himself an injury, and but for which effort on his part the injury would not have occurred, does not necessarily mean that he was guilty of contributory negligence. The rule is universal, and it is well stated in South Covington and C. S. R. Co. v. Ware, 84 Ky., 269, that:

"The right of a person to recover damages for personal injury is not affected by his having contributed to it, unless he was in fault in so doing. He may indeed not only contribute to it, but be the immediate cause of it, and yet recover. Thus, if a passenger, under a reasonable apprehension that a collision or other acci-

dent is imminent, changes his position to one in fact more dangerous, or even leaps from the vehicle while in motion, yet he may recover damages if he be injured; and this is true even though it may afterward appear that if he had sat still he would not have been injured. One is not bound under such circumstances to exercise all the prudence and care that ordinarily characterizes the conduct of a prudent man." See also M. & B. S. R. R. v. McCabe, 30 K. L. R., 1009.

But this rule is qualified by the requirement that in thus acting in the face of a threatened danger there must be a reasonable presumption of it, and that his conduct must conform to that of an ordinarily careful man under like circumstances. The Ware case, *supra,* quotes from 2 Rorer on Railroads, pp. 1092-3 as follows:

"He has no right, upon the happening of some trivial occurrence, or such as would not create fear or apprehension of injury in the mind of an ordinarily prudent and careful person, to bring injury upon himeslf, and then recover damages by reason of it."

All the authorities hold that where a servant thus acts for his safety, he must have reasonable grounds to believe that otherwise he will be injured, or as is stated in Pierce on American Railroad Law, 1st Ed. p. 474:

"If, through the default of the company or of its servants, the passenger is placed in such a perilous condition as to render it an act of reasonable precaution for the purpose of self preservation to leap from the cars, the company is responsible for the injury he receives thereby, although if he had remained in the cars he would not have been injured."

Quoting again from the Ware case:

"The character of the impending danger, or at least its apparent character, is to be considered. If one acts unreasonably rash, or becomes frightened at a trivial occurrence, not calculated to alarm a reasonably prudent man, and thereby brings injury upon himself, there is no liability."

See also Briggs v. N. N. & M. V. Co., 15 K. L. R., 618.

From this statement of the law and facts, it will be seen that the sole question for the jury to determine was whether the appellee had reasonable grounds to believe that he was in danger of being injured by collision, or other accident to his car, or whether he acted rashly or

unreasonably, or became frightened at a trivial occurrence not calculated to alarm a reasonably prudent man. The only question presented on this appeal is whether the court properly submitted this proposition to the jury. The instruction given submitted the case in this form:

"Instruction No. 2. If the jury should believe and find from the evidence that while plaintiff was in the employ of the said company, and on August 24, 1910, defendant negligently operated its train by turning loose the train upon which plaintiff was riding and by reason thereof, *the plaintiff in good faith believed that his life was thereby endangered,* the plaintiff jumped from the said train for his own safety, and plaintiff's arm was thereby broken, etc."

It will be noticed that the jury under this instruction had only to consider whether "the plaintiff in good faith believed his life was thereby endangered." Since the proof clearly shows that the plaintiff did in good faith believe that he was in danger, the instruction as given was practically a peremptory instruction to find for him. Although the jury may have believed that the accident was the result of appellee's own rash conduct, or that it was produced by his unreasonable fright caused by a trivial occurrence, or they may have believed that appellee was familiar with the railroad track, and knew that the grade was a short one, and that the car would soon come to a stop, even if the brake was out of order, yet none of these considerations could affect their finding under the instruction above quoted. By another instruction the court tells the jury that if they do not believe that the plaintiff used such care and caution as an ordinarily prudent person would have used under like or similar circumstances, and but for which failure the accident would not have occurred, that they should find for the defendant, but in our opinion this instruction to the jury did not cure the defect above noted. The question for recovery was not so much whether the plaintiff used ordinary care and caution for his own safety, as whether under the facts and circumstances he was placed suddenly and unexpectedly in a dangerous position by the negligence of appellant, or its servants, and whether under the facts and circumstances, he had reasonable grounds to believe that the position in which he had been suddenly placed was dan-

gerous. As instructed by the court, it was sufficient if he did believe in the danger without regard to whether there were any grounds to reasonably justify the belief.

For these reasons the case must be reversed, and on another trial instead of using in the instructions the words that "plaintiff in good faith believed that his life was thereby endangered," these should be substituted: "Plaintiff believed, and had reasonable grounds for believing that he was in danger of losing his life, or suffering bodily injury." In instruction three, instead of using the words "and regardless of safety," these should be substituted: "And without a reasonable care for his own safety."

Appellant says the court erred in refusing to give the two instructions it offered, but such of the questions embraced in them as it was entitled to have submitted to the jury are included within the instructions as corrected, and will be given on the next trial.

The judgment is reversed and remanded for proceedings consistent with this opinion.